ROBERTS, J.,
Dissenting.
¶ 11. I dissent. Edwards claims in his motion for post — conviction relief that his post-release supervision was unlawfully revoked by the trial court. After close review of the record, I am inclined to agree. Because post-release supervision cannot be revoked for a violation that occurred before the prisoner was on post-release supervision status, and that is exactly what occurred in this case, I would reverse and render.
¶ 12. A time line of relevant events concerning Edwards unfortunate criminal history is helpful in understanding the determinative issue.
DATE EVENT
February 19, 2003 Judgment of conviction in Cause #2002-0415-CRl based on guilty plea to felony DUI, sentence of five years; two years to serve in custody followed by three years post-release supervision.
May 17, 2004 Edwards released from confinement by the Mississippi Department of Corrections (MDOC) on earned release supervision from his two year custody sentence.
June 16, 2004 Edwards arrested for new aggravated assault charge that occurred June 16, 2004. MDOC revokes his earned release status and returns him to the penitentiary.
August 27, 2004 Edwards is issued his discharge certificate by MDOC from his two year sentence and returned to Lowndes County on the aggravated assault indictment.
November 19, 2004 Edwards pleads guilty to aggravated assault, indictment #2004-382-CR1, and is sentenced to seven years in custody and five years post-release supervision.
*825 November 19, 2004 Edwards post-release supervision in Cause #2002-0415-CRl is revoked by Judge Howard as a result of his guilty plea and Edwards is ordered to serve the three year sentence consecutively to the aggravated assault sentence in Cause #2004-382-CRl.
June 28, 2005 Edwards files a PCR motion in Cause #2005-0007-CVl.
August 19, 2005 Judge Kitchens denies the PCR motions without á hearing.
¶ 13. The majority cites Grace v. State, 919 So.2d 987 (Miss.Ct.App.2005) for support of its contention that a prisoner’s probation, or post-release supervision, may be revoked prior to his release from the initial term of incarceration. I argue that Grace does not stand for that proposition, but that the law of this state requires the inmate to begin his post-release supervision before it may be revoked.
¶ 14. Boston George Grace pled guilty to possession of a controlled substance and on February 18, 2002, was sentenced to serve a term of eight years in prison, with seven suspended, followed by three years of post-release supervision. Id. at (¶ 8). On August 31, 2002, Grace was released under earned-release supervision and assigned to report to Officer Mark Brooks, his earned-release supervising officer, until his post-release supervision began on October 8, 2002. Id. at (¶ 4). On October 1 Brooks informed Grace that he was to report to Officer Jimmy Shows, his post-release supervision supervising officer, but Grace failed to do so. Id. After further attempts to contact Grace, Shows filed a petition on November 6 to revoke Grace’s probation. Id. at (¶ 5). After Grace’s arrest in July 2003 the petition was amended to reflect his failure to report to Shows from October 2002 through June 2003. Id. At his revocation hearing in the Circuit Court of Harrison County, Grace admitted to violating his probation, and the trial court subsequently revoked his probation. Id. On appeal of denial of his petition' for post-conviction relief, Grace argued that his failure to report on October 2, 2002, to Brooks was a violation of his ■ earned-release, and not post-release, supervision. Id. at (¶ 7). Grace continued that the Circuit Court of Harrison County did not have jurisdiction to hear a case that involved revocation of earned-release supervision. Id.
¶ 15. In affirming the lower court, and confirming that Mississippi Code Annotated section 47-7-37 (Rev.2004) grants the courts jurisdiction over’ probationers throughout their sentence, this Court stated,
[rjegardless of whether [Grace] was under earned-or post-release supervision at the time he initially violated probation, Grace admitted to violating his probation in the months that followed, and when he appeared before the Harrison County Circuit Court at his probation revocation hearing in December of 2003, he had not been released from its jurisdiction. Accordingly, the court properly exercised jurisdiction over Grace in revoking his probation.
Id. at (¶ 8) (emphasis added). In holding as such, we were not saying that the courts had the power to revoke probation for acts that occurred before probation began, only that the courts had jurisdiction to revoke probation once the probationer violated the terms of probation. Specifically, in the passage above this Court implied that it did not matter what status Grace was in when he initially missed an appointment with his probation officer, of import was that he did so after his status changed from earned-to post-release supervision. Every meeting he missed from October 8, *826 2002, to his July 2003 arrest was a violation of Ms post-release supervision. It was these absences that allowed the trial court to revoke Grace’s post-release supervision, not his initial absence on October 1.
¶ 16. Similarly, at the time Edwards’s post-release supervision was revoked it is clear that he was on earned-release supervision, a statutorily different status. Mississippi Code Annotated Section 47-5-138(6) (Rev.2004) states, “[a]ny inmate, who is released before the expiration of his term of sentence under this section, shall be placed under earned-release supervision until the expiration of the term of sentence. The inmate shall retain inmate status and remain under the jurisdiction of the department.” Miss.Code Ann. § 47-5-138(6) (Rev.2004) (emphasis added). The record shows that Edwards was sentenced on February 19, 2003, to two years in the custody of MDOC followed by three years of post-release supervision. On May 17, 2004, Edwards was released and placed under earned-release supervision pursuant to Mississippi Code Annotated Section 47-5-138 (Rev.2004). One month later he was arrested for aggravated assault, and subsequently pled guilty in November 2004. The aggravated assault occurred while Edwards was on earned-release supervision and under the jurisdiction of MDOC as an inmate.
¶ 17. Post-release supervision is a different animal, and in Edwards’s case, had not yet begun. Mississippi Code Annotated Section 47-7-34 (Rev.2004) authorizes a court to impose a term of post-release supervision. If a term of post-release supervision is given,
[fjailure to successfully abide by the terms [set by the court] shall be grounds to terminate the period of post-release supervision and to recommit the defendant to the correctional facility from which he was previously released. Procedures for termination and recommitment shall be conducted in the same manner as procedures for the revocation of probation and imposition of a suspended sentence.
Miss.Code Ann. § 47-7-34(2) (Rev.2004) (emphasis added). Similarly, “[t]he courts ... shall determine the terms and conditions of probation or post-release supervision and may alter or modify, at any time during the period of probation or post-release supervision the conditions.... ” Miss.Code Ann. § 47-7-35 (Rev.2004) (emphasis added). The above passages indicate that the defendant must be on post-release supervision in order to violate the terms of such a status handed down by the trial court.
¶ 18. While not directly on point, Smith v. State, 742 So.2d 1146 (Miss.1999), illustrates this principle. In Smith, the defendant pled guilty to conspiracy to distribute cocaine on May 25, 1995, and was sentenced to twenty years in prison by the Circuit Court of Lowndes County. Smith, 742 So.2d at (¶ 2). However, the trial court suspended the sentence and placed Smith on probation for a period of five years with one condition of his probation being that “[The] Defendant shall hereafter commit no offense against the laws of this or any state of the United States.” Id. Not quite two months later, Smith pled guilty to another offense he committed in August 1994, nine months prior to his May 1995 guilty plea. Id. at (¶ 3). The Circuit Court of Lowndes County, interestingly the same court as in this case, subsequently held a revocation hearing and revoked Smith’s probation and ordered him to serve the entire twenty year sentence. Id. at (¶ 5). Smith then filed his petition for post-conviction relief, which was summarily dismissed. Id. at (¶¶ 6-7). After this Court affirmed the lower courts denial of post-conviction relief, the supreme court *827 reversed and held that a prisoner “cannot violate a condition of probation that does not exist.” Id. at (¶ 11). Specifically, the supreme court stated, “[i]t follows that Richard Smith could not have his probation and suspended sentence revoked for violation of a condition which did not exist, and specifically for something he had already done at the time the probation and suspended sentence were handed- down.” Id.
¶19. As I stated before, the facts of Smith are not directly on point, but the timing of the infraction committed by Smith and Edwards is similar and illustrative of the restrictions placed on the courts by Sections 47-7-34 and 47-7-35. Both defendants violated conditions of their probation/post-release supervision prior to probation/post-release supervision beginning. It goes against logic, and I argue the precedent of Smith, to say that an inmate can violate a condition of a status he is not yet on. Edwards was an inmate at the time he committed aggravated assault, and would not be eligible for post-release supervision for another two months. The record indicates there was some confusion as to this point during the revocation hearing. When defense counsel explained that Edwards was on earned-release, rather than post-release, supervision at the time of the assault the hearing judge stated, “[Edwards] got there and he didn’t serve the whole two years. The penitentiary let him out early on what they call ERS. The date that his foot hit the ground, he is on post-release. Period.” Furthermore, in what amounted to be a feeble attempt to educate the lower court on those mysterious processes MDOC utilizes, Mr. Stafford, an MDOC probation and parole officer present at Edwards’s revocation hearing, had the following colloquy with the court:
BY THE COURT: Now, [Edwards] was on post-release on the date that he got out. It’s called post-release supervision. Not post expiration of sentence or expiration of time that I had to spend in the penitentiary or some other early release program. As soon as he walked out of that penitentiary, he’s on post-release from the date -he gets out. And I’ll ask the Department of Corrections because they’re here. Did I state anything incorrectly?
BY MR. STAFFORD: Can I—
BY THE COURT: He don’t go to prison then, huh?
BY MR STAFFORD: When he’s released on ERS, he is still on inmate status.
BY THE COURT: That’s right.
BY MR. STAFFORD: Until his expiration of sentence on the original charge.
BY THE COURT: But I said he could get post-release when he gets out.
BY MR. STAFFORD: Yes, sir.
BY THE COURT: But he’s violated the terms and conditions of what I told him his post-release was. You mean to tell me I can’t revoke it?
BY MR. STAFFORD: That and of ERS, also.
BY THE COURT: ERS is what y’all have got to do with it.
BY MR. STAFFORD: Right.
BY THE COURT: Post release is what I’m going to do to him. He’s on post-release the day he walks out of my court and the day he walks out of the penitentiary he’s on it.
BY MR. STAFFORD: Yes, sir.
It is apparent that the trial judge believed that if Edwards was physically out of prison he was on post-release supervision. As the discussion supra shows, this is an incorrect statement of the law. Mississippi Code Annotated Section 47-5-138(6) clearly states that while a prisoner is on *828 earned-release supervision he is still an inmate and under the jurisdiction of MDOC. As such, the current state of our law mandates that the revocation of Edwards’s post-release supervision be reversed. I would reverse, render, and order the circuit court to rescind its order revoking Edwards’s post-release supervision in criminal case # 2002-0415-CR1.
GRIFFIS AND BARNES, JJ., JOIN THIS OPINION.